FLORIDA GAMING CORPORATION, Plaintiff,

v.

AFFILIATED FM INSURANCE COMPANY, Defendant.

No. 07 20897 CIV UNGARO.

United States District Court, S.D. Florida.

Aug. 2, 2007.

Robert Wayne Hudson, Infante Zumpano Hudson & Miloch LLC, Coral Gables, FL, for Plaintiff.

Adam Brian Leichtling, Nilda Alejandra Arroyave, Lapin & Leichtling, LLP, Coral Gables, FL, for Defendant.

ORDER ON DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, AND MOTION TO STAY AND COMPEL COMPLIANCE WITH CONDITIONS PRECEDENT

UNGARO, District Judge.

THIS CAUSE is before the Court upon the Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, and Motion to Stay and Compel Compliance with Conditions Precedent. (D.E.2, 4/10/07). Plaintiff responded to the motion on May 8, 2007 (D.E.10), and Defendant replied on June 1, 2007. (D.E.18). This motion is now ripe for disposition.

THE COURT has considered the Motions, pertinent portions of the record, and is otherwise fully advised in the premises.

## BACKGROUND

Plaintiff Florida Gaming Corporation ("Florida Gaming"), which owns and operates a business known as Miami Jai–Alai, brings this action to compel appraisal of losses incurred when Hurricane Wilma damaged its facilities on October 24, 2005.[1]

---

1. The Amended Complaint comprises three claims; Count I seeks declaratory relief, Count II is for breach of Contract, and Count III is for negligence and negligent misrepresentation. The current motion relates to Counts I and II, only; Count III is the subject of a separate motion to dismiss.

Affiliated FM Insurance Company ("Affiliated") issued an insurance policy to Florida Gaming, with a term from December 1, 2004 until December 1, 2005. In its motion, which relies on evidence outside the pleadings, Affiliated argues that Florida Gaming has failed to fulfill its obligations under the policy by refusing to submit Al Paxton, President of Professional Construction Analysts ("PCA"), and Phillip Skip, a maintenance supervisor at Miami Jai–Alai, to examinations under oath and by failing to turn over documents, in particular the contract with PCA, and documents related to PCA's licensing status in Florida.

Pursuant to the terms of the policy, in the event of loss, the insured, Florida Gaming, was required, in general terms, to (1) submit a sworn proof of loss, (2) allow Affiliated access to the property, (3) submit to examinations under oath, and (4) produce relevant documents. Specifically, the policy provides:

*REQUIREMENTS IN CASE LOSS OCCURS.*

The insured shall render to [Affiliated] a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, ... the actual cash value of each item thereof and the amount of loss thereto.... The insured, as often as may be reasonably required, shall exhibit to any person designated by [Affiliated] all that remains of any property herein described, and shall submit to examinations under oath by any person named by [Affiliated], and subscribe the same; and as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by [Affiliated] or its representative, and shall permit extracts and copies thereof to be made.

(Am.Compl.Ex. 1). In addition, the policy contains the following provision.

*SUIT*

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

(Am.Compl.Ex. 1). On the basis of this clause, Affiliated attempts to demonstrate that the suit and the attempt to invoke the policy's appraisal clause are premature.

The parties agree that following the loss Affiliated provided advance payments of $400,000 in November 2005 and $350,000 in March 2006 for certain repairs and to preserve the property; and that Affiliated has reviewed vendor invoices for other repairs and made additional payments of $1,101,159.93 based on the measure of undisputed covered damage (accounting for the advance payments, the deductible and the depreciation holdback). (Def.'s Mot. 5, Ex. 13; Resp. 2). Following these payments, Florida Gaming submitted a sworn proof of loss on November 17, 2006, in the amount of $17,106,421.26, and its corporate representative, Daniel J. Licciardi, Executive Vice–President and General Manager of Florida Gaming, appeared on January 16 and 17, 2007, for a lengthy examination under oath. (Am. Compl. ¶ 10, 11; Def.'s Mot. Ex. 7). Affiliated argues that Florida Gaming must submit to the additional examinations under oath because Mr. Licciardi lacked the knowledge necessary to respond to the questions propounded by Adam B. Leichtling, Esq., as the representative for Affiliated, therefore his examination under oath does not satisfy the conditions precedent to appraisal and/or suit. In his examination, Mr. Licciardi testified

that he had no personal knowledge about the loss and damage amounts contained in the proof of loss. (Def.'s Mot., Ex. 7 at 157:6–24, 158:1–8). Mr. Licciardi stated that he was relying entirely upon East Coast Public Adjusters, Inc. ("East Coast"), a public adjuster hired by Florida Gaming; East Coast, in turn, hired PCA to conduct the analysis of the damages. (Def.'s Mot., Ex. 7 at 157:6–24, 158:1–8, and 194–195).

Affiliated argues that because Mr. Licciardi relied on PCA's estimate, Florida Gaming is obligated by the policy to produce Mr. Paxton of PCA to an examination under oath. Additionally, Affiliated claims that Mr. Skipp, allegedly the individual in charge of the maintenance department should be produced for an examination under oath because Mr. Licciardi testified that the maintenance department would know the extent and scope of any preexisting interior damages at time of Hurricane Wilma. (Def.'s Mot. at 11, Ex. 7, 75:19–76:16, 76:23–77:1). Additionally, Affiliated contends that Florida Gaming has failed to turn over certain documents as required by the policy. Specifically, Mr. Licciardi testified that tiles were replaced in the poker room "three years ago" but, according to Affiliated, documents relating to the repair have not been turned over. (Mot.15, Ex. 7, 91:17–92:10). Further, Affiliated argues that, contrary to the terms of the policy, Florida Gaming has not provided the contract between East Coast and PCA as well as documents relating to PCA's licensing.[2] On the basis of these

purported failures to satisfy the requirements in case of loss, Affiliated seeks dismissal and an order granting summary judgment on the declaratory judgment claim, staying of the breach of contract claim, and compelling Florida Gaming to comply with its requests for the examinations of Mr. Skipp and Mr. Paxton and the production of the additional documents.

In response, Florida Gaming contends that they have complied with the policy by producing all documents in its possession responsive to Affiliated's requests and that the language of the insurance policy does not allow Affiliated to take the two additional examinations under oath. Additionally, Florida Gaming argues that by tendering payments, Affiliated waived any requirement that Florida Gaming do anything further to support its proof of loss. Florida Gaming contends that it has met its obligations under the policy and have properly invoked the appraisal clause of the contract, thereby requiring Affiliated to submit to appraisal.

### Legal Standard

The parties have submitted matters outside the pleadings, therefore the Court will consider this motion as one for summary judgment. Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

2. Affiliated refers to Fla. Admin. Code R. 690–220.201(5)(c)(2001), which sets forth ethical considerations for various classes of insurance adjusters. The ethical rules guiding public adjusters require the public adjuster (a) to advise the insured of its right to choice of counsel, (b) to notify in advance, and inform the insured of its veto power over, the use of any contractor, architect, engineer, or similar professional for estimating the loss

or negotiating the settlement, and (c) the public adjuster shall ensure that if a contractor, architect, engineer, or other licensed professional is used in formulating estimates or otherwise participates in the adjustment of the claim, the professional must be licensed by the Florida Department of Business and Professional Regulation. Fla. Admin. Code. R. 690–220.201(5).

that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56. The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

### Discussion

#### A. Satisfaction of Post–Loss Obligations

■ In order to compel appraisal, the insured must meet all of the policy's post-loss obligations. *See Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 775 (11th Cir.2000) (citing *United States Fidelity & Guar. Co. v. Romay*, 744 So.2d 467, 468 (Fla. 3rd DCA 1999)); *Goldman v. State Farm Fire Gen. Ins. Co.*, 660 So.2d 300 (Fla. 4th DCA 1995) (failure to comply with an insurance policy's examination under oath requirement constitutes a breach). These obligations are determined by the policy language at issue in the particular case. It is well-settled that in interpreting insurance contracts, the policy should be construed so as to give effect to the intent of the parties and if the policy is ambiguous, it should be construed against the insurer

and in favor of the insured. *Stuyvesant Ins. Co. v. Butler*, 314 So.2d 567 (Fla. 1975); *Travelers Ins. Co. v. Bartoszewicz*, 404 So.2d 1053, 1054 n. 4 (Fla.1981) (observing that as insurance policies are prepared by experts in a complex field, public policy dictates that courts interpret insurance policies in the manner most favorable to the insured) (citing *Praetorians v. Fisher*, 89 So.2d 329, 333 (Fla.1956)). In determining whether Florida Gaming has complied with the post-loss conditions under the policy (the terms of which is undisputed), the Court is guided by these rules of construction. Additionally, when evaluating an insurer's rights to investigation of a claim, "the insurer's rights tend to be measured by 'reasonableness,' with the courts attempting to balance the insurer's legitimate interest in ascertaining the validity and extent of the claim against the insured's ... rights to both privacy and prompt payment of sums due under the terms of the contract." 8A G. Couch, *Couch on Insurance 3d* § 196:2.

#### 1. Examination of Al Paxton

■ Affiliated argues that Florida Gaming must submit Al Paxton to an examination under oath because PCA performed the analysis upon which Florida Gaming has relied in its sworn proof of loss. Florida Gaming responds that the policy requires only that "the insured" submit to examinations under oath. The Court agrees with Florida Gaming, that given the language of the policy, which authorized the examination of "the insured," an examination of the insured's adjuster (or its agents or representatives) does not appear to have been contemplated. The Court therefore applies the rule requiring that the policy be interpreted in favor of the insured, and finds as a matter of law that Al Paxton is not required to submit to an examination under oath. In so finding, the Court has considered the authority offered

by Affiliated, and finds the cases distinguishable. In *West v. State Farm Fire and Cas. Co.*, 868 F.2d 348, 351 n. 1 (9th Cir. 1989), the policy specifically required that the policy holder "produce employees, members of the insured's household or others for examination under oath..." In other cases cited, the policy language is not explicitly discussed, or the courts, without legal analysis, merely acknowledged that an adjuster had been examined under oath. *See Gipps Brewing Corp. v. Central Mfrs.' Mutl. Ins. Co.*, 147 F.2d 6 (7th Cir.1945); *Zar Realty Mgmt. Corp. v. Allianz Ins. Co.*, 2003 WL 21787323 (S.D.N.Y.2003); *Moskos v. Nat'l Ben Franklin Ins. Co.*, 60 Ill.App.3d 130, 17 Ill.Dec. 389, 376 N.E.2d 388, 391 (1978). In particular, the Court is not persuaded that the decision in *Jacobs v. Nationwide Mutual Fire Ins. Co.*, Case No. 97–1485–Civ–Graham (S.D.Fla. Sept. 10, 2002), compels a result at odds with the rule requiring courts to read policy language against the insurer.[3] The policy language here contemplates examination of "the insured" only; if the court were to consider this language to be ambiguous, such that "the insured" is susceptible of meaning "the insured, its employees, representatives, agents, and others who assist it in formulating its claim," the applicable interpretive rules require that the Court credit the more restrictive meaning. Accordingly, Affiliated has not shown it is entitled to summary judgment based on the failure of Florida Gaming to make Mr. Paxton available for an examination under oath per the policy.

### 2. Examination of Phillip Skipp

Affiliated argues that Phillip Skipp, a Florida Gaming employee, also should be produced for an examination under oath because Mr. Licciardi stated in his examination under oath that the maintenance department had information regarding the interior spaces. Florida Gaming responds that it has no such obligation because Mr. Skipp did not participate in preparing the proof of loss or in evaluating and adjusting the claim and has no knowledge of the basis for Florida Gaming's damage estimate. (Response 9; Mot. Ex 7, 155:17–156:2; Licciardi Aff. ¶ 16; Skipp Aff. ¶ 5). Based on this lack of knowledge, Florida Gaming argues that it is unreasonable for Affiliated to demand Mr. Skipp's examination; in any event, Florida Gaming asserts that per the policy language it is not required to produce him.

It is undisputed that the named insured under the policy is "Florida Gaming Corporation, Inc., Florida Gaming Centers, Inc., d/b/a Miami Jai–Alai, Fort Pierce Jai–Alai." (Am.Compl.Ex. 1, Mot.Ex. 1).[4] Florida Gaming contends that when the named insured is an entity and not a person, the named insured has the right to choose the representative to be examined. *See Law and Prac. of Ins. Coverage Litig.* § 3:11, n. 33 (citing *Parham v. Church Mut. Ins. Co.*, 918 S.W.2d 214 (Ark.App. 1996), *reh'g granted and opinion vacated*

---

**3.** In *Jacobs*, the district court determined that the plaintiffs examinations under oath did not satisfy the post-loss obligations under the policy because they were unable to answer questions about the accuracy of the estimate prepared by the public adjuster. The Court notes that the plaintiffs in that case had also failed to file a sworn proof of loss and had not provided financial documents before seeking appraisal, thereby completely failing to satisfy the conditions precedent under the policy.

*Jacobs v. Nationwide Mutual Fire Ins. Co.*, Case No. 97–1485–Civ–Graham (S.D.Fla. Sept. 10, 2002).

**4.** The Court's review of the policy attached to the Amended Complaint shows that Summer Jai–Alai is an additional named insured. The parties have not raised this issue, and it does not have any substantive impact on the Court's analysis. (Am. Compl. Ex. 1 at p. 5 of 7).

*on other grounds,* 53 Ark.App. 194, 922 S.W.2d 724 (1996), *superseded on other grounds,* 54 Ark.App. 262, 924 S.W.2d 494 (1996)). Florida Gaming argues that the right to designate the party to be examined is analogous to the Federal Rules of Civil Procedure for depositions of corporations, Rule 30(b)(6) which leaves to the corporation's discretion who it chooses to be its representative. The Rule states, in relevant part: "the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf...." Fed.R.Civ.P. 30(b)(6). Florida Gaming asserts that it chose Mr. Licciardi as the corporate officer with the most knowledge of the topics requested by Affiliated; while he admittedly had little knowledge regarding the repair and damage estimates in the proof of los, Florida Gaming claims that appraisal is the proper mechanism to resolve questions regarding discrepancies in the cause and scope of the claim. (Pl.'s Resp. at 11). Moreover, Florida Gaming argues that the request for Mr. Skipp's examination is unreasonable because he does not have knowledge of small repairs on the premises as such repairs are tasked to whomever is at hand, and the maintenance department does not keep records of all work done on the premises. (Skipp Aff. ¶¶ 3–5). Further, Florida Gaming posits that Affiliated only seeks the examination of Mr. Skipp as an "admission" of non-compliance with the policy, such that Affiliated could later use it to circumvent its policy obligations.[5]

In its reply, Affiliated refutes Florida Gaming's attempt to cast Mr. Skipp as unknowledgeable but submits no evidence contradicting Mr. Skipp's affidavit. Addi-

tionally, Affiliated presents a new argument-that based on an April 2007 S.E.C. filing, Florida Gaming has additional knowledge regarding the value of assets damaged in the storm. (Reply at 6, Ex. 4 at 89–90 n.O). Therefore, it appears that Affiliated is seeking additional examinations of Florida Gaming employees. However, despite these arguments, the Court is not persuaded that it should depart from the rule of construction requiring it to read the term "the insured" in a narrow manner. *Stuyvesant Ins. Co. v. Butler,* 314 So.2d 567 (Fla.1975).

▪ The Court finds additional support for its conclusion that Florida Gaming is not required to produce Mr. Skipp in *Paulucci v. Liberty Mutual Fire Ins. Co.,* 190 F.Supp.2d 1312, 1325–27 (M.D.Fla.2002), a case cited by both parties. In *Paulucci,* the policy named a corporation as well as the plaintiff (an individual) as an additional insured. The Court determined that when a board member of the corporation, and not the individual named insured, submitted to an examination under oath for four hours of questioning (and produced numerous documents), the examination was sufficient-despite the examinee's inability to answer all of the questions-to satisfy the examination under oath requirement. *Id.* Likewise, in this case, Mr. Licciardi, the representative chosen by Florida Gaming, submitted to a lengthy examination under oath. While Mr. Licciardi's testimony indicated that the maintenance department might have additional information regarding small repairs going back to 2000 (Mot. at 8–9, Ex. 7, 180:25–181:24), this does not mean that Mr. Licciardi was not the most knowledgeable person fitting the definition

---

**5.** Florida Gaming offered to produce Mr. Skipp for an examination under oath, but withdrew the offer upon receipt of a March 8, 2007 letter from Affiliated stating, "As noted above, Florida Gaming Corporation will be producing Mr. Skipp for Examination Under Oath. This reflects that Florida Gaming Corporation agrees that it has not yet complied with the Requirements in Case Loss Occurs of Policy No. G1556." (Pls.Resp., Ex. 3).

of "the insured" and that his examination does not satisfy the requirements of the examination under oath.[6] Further, as in the case of the examination of Mr. Paxton, the Court construes the contract ambiguity over the definition of the term "insured" in favor of Florida Gaming. Thus, Affiliated has not shown it is entitled to summary judgment because Florida Gaming has not permitted Mr. Skipp to be examined under oath under the policy.

### 3. Production of Additional Documents

■ Finally, Affiliated argues that Florida Gaming has not satisfied its post-loss obligations by failing to produce documentation related to PCA, namely the contract which engaged PCA for the appraisal and documents related to its licensing in the state of Florida.[7] In response, Florida Gaming repeatedly asserts that it has produced hundreds of pages of documents concerning both its pre-Hurricane and post-Hurricane conditions and has continuously offered to make its books and records available to Affiliated. (Pls. Resp. at 4–5). Moreover, Dan Licciardi attests that Florida Gaming does not have documents related PCA. (Pl.'s Resp., Ex. Aff. Dan Licciardi ¶ 5). Additionally, Florida Gaming has filed the affidavit of Patrick Catania, President of East Coast Public Adjusters, in which he states that East Coast did not enter into a written contract with PCA

with respect to Florida Gaming. (D.E. 30, Aff. Catania ¶¶ 3, 4). These statements are uncontroverted as Affiliated has produced no evidence to suggest that the PCA documents do in fact exist.

In its reply, Affiliated argues Florida Gaming has produced additional requested documents since the Motion was filed. However, the email attached to the additional documents states, "Attached are documents that my client just located. Florida Gaming has no other documents requested by Affiliated FM." (Def.'s Reply, Ex. 1, Email from Robert Hudson, Apr. 24, 2007). Thus, Florida Gaming has produced evidence tending to show that it has produced all documents in accordance with the policy terms, therefore summary judgment in favor of Affiliated is inappropriate. Affiliated has not met its burden of demonstrating that there is no genuine dispute of fact that Florida Gaming is withholding documents.[8] Therefore, Affiliated has failed to sustain its burden.

### B. Waiver

As an alternative argument, Florida Gaming cites FLJUR INSURANCE § 2719 for the proposition that a course of conduct by the insurer evidencing to the insured an admission or recognition of liability amounts to a waiver of formal notice and proofs of loss or of defects therein.

---

6. The representative chosen in *Paulucci* deferred to others during questioning and the court found no indication that he was not the most knowledgeable person to respond to the range of the questions asked. *Paulucci*, 190 F.Supp.2d at 1326.

7. Additionally, in their motion, Affiliated specifically mentions documents related to vinyl tile replacement in the poker room that have not been produced. In its response, Florida Gaming does not confront head-on the assertion that it has failed to turn over documents related to the particular repair, but claims it has turned over all documents responsive to

Affiliated's requests. The Court notes, that in any event, considering that the proof of loss claims $17,106,421.26 in damages, any invoice related to pre-storm tile replacement in an interior room could only have a de minimus impact on the claim.

8. The Court notes that Affiliated's submission of Florida Gaming's April 2007 Form 10–KSB, which contains a statement regarding the carrying value of assets damaged by a hurricane, does nothing to demonstrate that no factual issues remain, and in fact suggests otherwise. (Def.'s Reply at 6; Ex. 4, Form 10–KSB at 89–90 n.O).

*Id.* (citing *Bear v. New Jersey Ins. Co.*, 138 Fla. 298, 189 So. 252 (1939); *English & Am. Ins. Co. v. Swain Groves, Inc.* 218 So.2d 453 (Fla. 4th DCA 1969); *Llerena v. Lumbermens Mut. Cas. Co.*, 379 So.2d 166 (Fla. 3d DCA 1980)). Florida Gaming argues that the fact that Affiliated has made payments of over a million dollars to date indicates that it has waived the right to additional information and must submit to appraisal at this time because the sole issue is the differences in the parties' causation and damages estimates. However, Florida Gaming has not moved for summary judgment and has not established the absence of genuine issues of material fact on this issue. Therefore, the Court declines to resolve whether Affiliated has waived the conditions precedent under the policy.

### CONCLUSION

Based on the foregoing, the Court finds that Affiliated has not demonstrated that it is entitled to judgment as a matter of law with respect to Florida Gaming's post-loss obligations under the policy.

ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment on Count I is DENIED.

ORDERED AND ADJUDGED that the Motion to Stay Count II is hereby GRANTED.