**VISION I HOMEOWNERS ASSOCIATION, INC., a Florida non-profit corporation, Plaintiff,**

v.

**ASPEN SPECIALTY INSURANCE COMPANY, a North Dakota corporation, and James River Insurance Company, an Ohio corporation, Defendants.**

**Case No. 08–81211–CIV.**

United States District Court, S.D. Florida.

Dec. 22, 2009.

Daniel S. Rosenbaum, Jennilynn E. Lawrence, John Marcus Siracusa, Mark Gerard Keegan, Richard Chambers Valuntas, Katzman, Garfinkel, Rosenbaum, LLP, West Palm Beach, FL, for Plaintiff.

Max Galen Factor, William Lanier Wallis, Gina G. Smith, Butler Pappas Weihmuller Katz et al., Tallahassee, FL, Richard Michael Dunn, Anaysa Gallardo, Cozen O'Connor, Miami, FL, for Defendants.

### ORDER GRANTING IN PART; DENYING IN PART ASPEN'S MOTION FOR SUMMARY JUDGMENT

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendant Aspen Specialty Insurance Company's Motion for Summary Judgment and Partial Summary Judgment with Supporting Memorandum of Law [DE–83], filed herein on July 24, 2009. The Court has carefully considered the Motion, Defendant's Statement of Undisputed Facts [DE–84], Plaintiff's Response [DE–91], Plaintiff's Statement of Material Facts in Opposition [DE–92], Defendant's Reply [DE–94], Defendant's Reply to Plaintiff's Statement of Material Facts [DE–95], Defendant's Supplement [DE–124], the arguments presented by counsel at the hearing before the undersigned on December 4, 2009, and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Vision I Homeowners Association, Inc. ("Vision I") filed the above-styled

action on October 21, 2008. [DE–1]. Vision I is a homeowners association and not-for-profit Florida corporation, doing business in Palm Beach County. Defendant Aspen Specialty Insurance company ("Aspen") is a foreign corporation and insurance carrier transacting insurance in Palm Beach County, Florida. It is incorporated in North Dakota and has its principal place of business in Massachusetts. Aspen provided property insurance, Policy No. PP 002120, to Vision I for the twelve month period commencing May 10, 2005.

Defendant James River Insurance Company ("James River") is a foreign corporation and insurance carrier transacting insurance in Palm Beach County, Florida. It is incorporated in Ohio and has its principal place of business in Virginia. It issued excess property coverage, Policy No. 00009793, for the twelve month period commencing May 10, 2005.

According to the Complaint, the intent of the contracts was to provide commercial lines residential property insurance coverage, including, but not limited to, coverage for hurricanes, for direct physical loss to the insured property for the twelve month period commencing May 10, 2005. Hurricane Wilma struck Palm Beach County on October 24, 2005. As a result, the Complaint alleges, the insured property sustained damages and Vision I timely reported these damages to Aspen and James River. The insurers had an opportunity to inspect said damage. However, Plaintiff alleges that Defendants failed to provide Vision I with any estimate of the damages and have failed to adjust, pay, and/or settle the claim.

Plaintiff asserts three counts (Counts I, III, V) against Defendant Aspen. Count I of the Complaint seeks a declaratory judgment a) that the Aspen Contract is valid and enforceable; b) that Vision I has a valid and enforceable right to coverage and to a determination of the total amount of all damages sustained from Hurricane Wilma; c) determining the total amount of the loss and damages caused by Hurricane Wilma to Vision I; and d) that Vision I be awarded supplemental relief to fully compensate it for all of its hurricane related damages. It also seeks a declaration that the policy fails to comply with Florida Statute Section 627.701 and, therefore, the provision concerning a separate hurricane deductible is unenforceable. In addition, it seeks a declaration that the provision regarding a separate "5% of TIV" deductible is ambiguous and that Aspen failed to offer it a deductible in the amount of 3% of the insured value in violation of Florida Statute Section 627.701(8). Therefore, Vision I alleges it should be declared unenforceable and/or be construed against Aspen. Count III is for a breach of contract against Aspen for a failure to pay the actual cash value of the losses or damages suffered by the property. Finally, Count V is for a breach of contract against Aspen for a failure to determine and pay the replacement cost value on its claim.

On July 24, 2009, Aspen filed the instant Motion seeking summary judgment in its favor on the Complaint as a matter of law; summary judgment in its favor on its first affirmative defense for failure to provide timely notice and second affirmative defense for failure to comply with the conditions of the policy; partial summary judgment which respect to increase cost of construction or the endorsement for ordinance and law coverage; and partial summary judgment on its third affirmative defense for failure to satisfy the requirements for replacement cost coverage.

## II. *DISCUSSION*

### A. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleadings," but instead must come forward with "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."

*Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

## B. Aspen's Motion for Summary Judgment

### 1. Failure to Provide Timely Notice

Defendant Aspen moves for summary judgment arguing that Plaintiff failed to provide timely notice of the loss. Defendant contends that written notice of property wide damage was not given until August 2007, some 22 months after the loss. Prior to this, Vision I provided an initial notice on June 14, 2006, which only identified damage in three units. Aspen points to Section E(3) of the Policy that provides that in the event of a loss, an insured must give "prompt notice." Aspen argues that Florida law is clear that if the insured breaches the notice provision, prejudice to the insurer will be presumed and can only be rebutted by a showing that the insurer has not been prejudiced. *Bankers Ins. Co. v. Macias*, 475 So.2d 1216, 1218 (Fla.1985); *Employer Reinsurance Corp. v. Laurier Indem. Co.*, Case No. 8:03–CV–1650–T–17MSS, 2006 WL 1679366, *18 (M.D.Fla. Jan. 30, 2006); *Lane v. Provident Life & Accident Ins. Co.*, 178 F.Supp.2d 1281, 1287 (S.D.Fla.2001); *Allstate Ins. Co. v. Occidental Int'l, Inc.*, 140 F.3d 1, 5 (1st Cir.1998). Aspen also points to *Ro–Ro Enterprises, Inc. v. State Farm Fire and Cas. Co.*, Case No. 93–1754–CIV, 1994 WL 16782171 (S.D.Fla. June 22, 1994), where the court noted that notice after four or five months was appropriate for summary judgment. *Id.* at *3. Aspen argues that even if the June 2006 date is used as the notice date, there was prejudice based on the gap of time that passed. Thus, Aspen argues that the prejudice is established, and Plaintiff cannot rebut the prejudice, especially given the unrepaired 2004 hurricane damage and Plaintiff filing suit while Aspen's investigations were on-going.

Plaintiff responds by arguing that the late notice argument involves a genuine issue of material fact. Though it is undisputed that Vision I did not report the claim until June 2006, this was due to the fact that the damage was not known until this time—when it began raining and people noticed the damage by way of leaking. [DE–80–5, pg. 38–39]. Vision I argues that the testimony and documents of Aspen's own agents reveal that the "property wide claim" was reported in July 2006. [DE–90–2 and 90–3, pg. 128–129, 155; DE–91, Ex. A; DE–91, Ex. B]. Vision I requested that Aspen conduct a property wide inspection in July 2006, but contends that Aspen refused. [DE–90–2 and 90–3, pg. 128–129, 155]. Moreover, Vision I argues that there is nothing in the policy that requires a written notice of loss. Vision I argues that it was Aspen who decided not to conduct a property wide inspection in 2006, despite the express request of Plaintiff.

Plaintiff points to Florida case law as providing that prompt notice means within a reasonable time in light of all the facts and circumstances. *Employers Cas. Co. v. Vargas,* 159 So.2d 875, 877 (Fla. 2d DCA 1964); *Laster v. U.S. Fid. & Guar. Co.,* 293 So.2d 83, 86 (Fla. 3d DCA 1974). Therefore, it is a question of fact for the jury. *Ideal Mut. Ins. Co. v. Waldrep,* 400 So.2d 782, 785 (Fla. 3d DCA 1981); *Solano v. Fed. Title & Ins. Co.,* 229 So.2d 312, 313 (Fla. 1st DCA 1969). Plaintiff also argues that if an insured cooperates to some degree or provides an explanation for non-compliance, as opposed to a total failure to comply, then whether the policy is breached is a question of fact for the jury. *Horizons Condo. Ass'n, Inc. v. QBE Ins. Corp.,* Case No. 6:06–cv–418–Orl–19JGG, 2007 WL 294230, at *4 (M.D.Fla. Jan. 29, 2007).

Plaintiff further argues that Defendant was not prejudiced as Aspen was the one that refused to investigate. Furthermore, the affidavit of Mark Phillips, the adjuster sent by Defendant James River establishes that there was no issue in attributing the damages to Hurricane Wilma—therefore, Vision I argues there was no prejudice. [DE–90–4, pg. 4]; *see Robinson v. Auto Owners Ins. Co.,* 718 So.2d 1283, 1284 (Fla. 2d DCA 1998); *Harris Specialty Chems., Inc. v. U.S. Fire Ins. Co.,* Case No. 3:98–CV–351–J–20B, 2000 WL 34533982, *10 (M.D.Fla. July 7, 2000). Plaintiff also points to the deposition testimony of Mr. McWilliams to argue that Vision I only suffered minor damages from the 2004 hurricanes, some of which were repaired, thus Aspen's argument that it was prejudiced based on unrepaired 2004 damages is unavailing. In addition, Aspen itself inspected the property when issuing the policy and completed a satisfactory "loss control report" with no recommendations for rectifying any problems. [DE–91–4, pg. 60].

Defendant replies that it is undisputed that notice was not received until June 14, 2006 and July 2006 as to property-wide damages. Defendant argues this was untimely. As for the discovery argument, Aspen argues that there was additional obvious damage beyond the leaky roofs and windows. [DE–90–4, at ¶ 9–11]. Moreover, Aspen contends that Plaintiff has failed to rebut the presumption of prejudice from the late notice. The Phillips Affidavit does not address whether he was aware of prior unrepaired damage from the 2004 hurricanes. In addition, Aspen argues that Plaintiff's reliance on the loss control report is misplaced as its purpose is to verify information on the application and not whether there were unrepaired damages. [DE–91–4, pg. 58, lines 7–16].

In its Supplement motion [DE–124], Aspen also attempts to rebut Plaintiff's assertion that the notice was not late due to

the insufficient rainfall after the date of loss for any leaks to manifest. Aspen points to the deposition testimony of Dr. Branscome [DE–124, Ex. A], who performed a rainfall analysis from the date of Hurricane Wilma through June 2006, which demonstrates that there were 21.85 inches of rain in the area of the loss location during the time period and there were at least six days of more than one inch of rainfall in a 24 hour period. As such, Aspen argues that such heavy rain should have made Plaintiff aware of any damage much earlier than reported. In addition, in support of Aspen's prejudice argument, Aspen offers the deposition testimony of Wayne Marks [DE–124, Ex. B] who testified that it becomes very difficult to determine the cause of damage the further you get from the event. Further, Aspen argues that Plaintiff has failed to rebut the presumption of prejudice as the only evidence offered by Plaintiff was paragraph 12 of Phillips' Affidavit. However, Aspen points to the deposition testimony of Phillips where he acknowledged it would have been easier to know what caused the damage if he had examined the property in December 2005 rather than in December 2007. [DE–124, Ex. C].

Under Florida law, a failure to provide timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy. *See Waldrep,* 400 So.2d at 785 ("Notice is necessary when there has been an occurrence that should lead a reasonably prudent man to believe that a claim for damages would arise."). Indeed, Florida law provides that the failure to give timely notice creates a rebuttable presumption of prejudice to the insurer. "If the insured breaches the notice provision, prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced." *Macias,* 475 So.2d at 1216. The "determinations of (I) whether the notice provision was complied with and (ii) what is a reasonable time under the surrounding circumstances are questions of fact." *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.,* 2009 WL 1513400, at *6 (M.D.Fla.2009) (citing *Waldrep,* 400 So.2d at 785). In order to prevail on a late notice defense, "a party must therefore show that there are no genuine issues of material fact regarding 1) what the Policy required with respect to notice, 2) when notice was provided, within the meaning of the Policy and Florida law, 3) whether notice was timely, and 4) whether prejudice exists, either by operation of the unrebutted presumption or otherwise." *Id.* The Court concludes that Aspen cannot carry that burden on this record.

The *Bray* court faced a similar scenario to the present facts—that is, the insurer argued that the insured provided late notice in violation of the policy provision requiring notice "as soon as practicable." *Id.* The court held that under Florida law, application of this specific policy language is for the jury, as such language means that "notice is to be given within a reasonable time in view of all the facts and circumstances of each particular case." *Id.* at *7 (citing *Morton v. Indemnity Ins. Co. of North America,* 137 So.2d 618 (Fla. 2d DCA 1962), *State Farm Mut. Auto. Ins. Co. v. Ranson,* 121 So.2d 175 (Fla. 2d DCA 1960)). The *Bray* court concluded that the "surrounding circumstances" of that case were "replete with factual disputes" regarding when notice was required to be given and the manner in which notice was provided. *Id.* For example, the court noted that the plaintiff "presented evidence which, if credited, shows that [the plaintiff] did not know the extent of the claimed damage would implicate the [insurer's] policy until 2005, after certain reports were concluded." *Id.* at *7, fn. 9. The court emphasized that since "the duty to provide notice arises when a reasonable person, viewing all available facts and information,

would conclude that an award implicating the policy is likely," the insurer could not establish for purposes of summary judgment, when the duty to notify the insurer first arose. *Id.* (citing *See Harbor Ins. Co. v. Trammell Crow Co., Inc.* 854 F.2d 94, 99 (5th Cir.1988)). Therefore, the court concluded that "[a]bsent a finding as to exactly when the duty to notify arose, the [c]ourt cannot determine that notice was untimely as a matter of law," precluding the granting of summary judgment on the issue of late notice. *Id.*

■ Similarly here, the Court is persuaded that the issue of whether Vision I's notice was "prompt notice" as required by Section E(3) of the Policy, much like the requirement of notice "as soon as practicable," is a question of fact for the jury that precludes summary judgment.[1] When viewing the "surrounding circumstances" the instant action is "replete with factual disputes" regarding when notice was required to be given and whether Vision I met that requirement. *Id.* at *7. As in *Bray*, Vision I has presented evidence which, if credited, shows that Vision I did not know the extent of the claimed damage and, therefore, could not have reported the claim earlier due to the fact that the damage was not known until June of 2006—when it began raining and people noticed the damage by way of leaking. [DE–80–5, pg. 38–39]. In response, Aspen argues that there was significant rainfall that should have alerted Plaintiff earlier to any purported leaks and also that much of the purported damage to Vision I was obvious and, therefore, should have been reported earlier. Nevertheless, the "duty to provide notice arises when a reasonable person, viewing all available facts and information, would conclude that an award implicating the policy is likely." *Bray,*

2009 WL 1513400, at *7, fn. 9. The Court concludes that such a determination is a question of fact, and when considering that multiple issues of disputed fact exist, summary judgment is not appropriate on the late notice defense.

### 2. Failure to Comply with the EUO Conditions of the Policy/No Action Clause

Aspen also seeks summary judgment in its favor on its second affirmative defense on the ground that Plaintiff failed to comply with the policy conditions by not producing requested information, refusing to submit to additional Examinations Under Oath (EUO), failing to cooperate in the investigation, and filing this action before there was full compliance with the policy. Aspen contends that Vision I did not comply with its duty to submit to EUOs. Andrew Greenfield provided an EUO on behalf of Vision I, but Aspen argues he was unable to answer numerous questions. As a result, Aspen requested additional EUOs. However, Vision I filed this action and refused to dismiss it. Aspen further contends that Mr. Greenfield failed to sign the errata sheet verifying whether or not his answers were true and correct. Aspen points to Section E(3) that states:

> We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Aspen contends it sent a letter on June 30, 2008, requesting an EUO and another letter requesting and EUO on November 11, 2008. As such, Aspen points to *Goldman*

---

1. The Court notes that the Aspen policy created the possibility of this inherent ambiguity regarding notice by using the term "prompt notice" rather than a finite term, such as requiring notice within sixty or ninety days from the date of the loss.

*v. State Farm Fire Gen. Ins. Co.*, 660 So.2d 300, 304 (Fla. 4th DCA 1995), *rev. denied,* 670 So.2d 938 (Fla.1996), for the proposition that an "insured's refusal to comply with the demand for an EUO [when the policy contains such a provision] is a willful and material breach of an insurance contract, which precludes the insured from recovery under the policy." *See also, S. Home Ins. Co. v. Putnal,* 57 Fla. 199, 49 So. 922 (1909); *Stringer v. Fireman's Fund Ins. Co.,* 622 So.2d 145 (Fla. 3d DCA 1993), *rev. denied,* 630 So.2d 1101 (Fla. 1993).

Aspen also argues that Vision failed to produce requested documentation and refused to cooperate in the investigation of the loss as it refused to have unit owners fill out surveys. Further, Aspen argues that Vision violated the "no action clause" in Section D of the policy as it states that an insured may not bring an action until all of the conditions of the policy have been fully complied with. Therefore, Aspen argues that Plaintiff failed to comply with the conditions precedent to filing suit. Since Plaintiff failed to comply with the EUO provision and failed to timely file notice, it did not comply with the terms of the policy and, thus, Aspen argue that Vision I breached the "no action" clause.

In response, Plaintiff contends that it complied with the EUO requirement by presenting Mr. Greenfield before filing suit as there is no provision that requires it subject itself to more than one EUO. The policy states that Aspen can examine "any insured" under oath—Vision I is the only insured and appeared. In addition, Vision I points out that there is no provision in the policy as to when Mr. Greenfield was required to sign the EUO answers. Plaintiff also argues that the lead adjuster, Dean Palmieri, sent a letter on September 21, 2006 stating that Aspen was declining payment for loss, which constitutes a denial of the claim. [DE–90–4]. The corporate representative even stated as such.

[DE–91–4, pg. 45–47]. Therefore, Vision I argues that it no longer had to comply with conditions precedent prior to filing suit. *Cooke v. Ins. Co. of N. Am.,* 652 So.2d 1154, 1156 (Fla. 2d DCA 1995); *Ro–Ro,* 1994 WL 16782171 at *4. In addition, Plaintiff argues that it cooperated to some degree, thus there is a factual issue as to whether there was a breach of the policy provisions. *Horizons,* 2007 WL 294230, at *4; *Paulucci v. Liberty Mut. Ins. Co.,* 190 F.Supp.2d 1312 (M.D.Fla.2002).

In reply, Aspen counters that the September 27, 2006 letter was not an unconditional denial—it simply informed Plaintiff that the damages to three specific units were caused by conditions excluded under the policy. In August 2007, Aspen claims it re-opened the claim upon being contacted by the Public Adjuster Oakes as to property-wide damages.

■■ The Court concludes that genuine issues of material fact exist precluding summary judgment on Aspen's second affirmative defense. "Florida law is clear that while a total failure to comply with policy provisions made a prerequisite to suit under the policy may constitute a breach precluding recovery from the insurer as a matter of law, if the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury." *Horizons,* 2007 WL 294230, at *4 (denying summary judgment where the plaintiff presented "evidence of both some degree of cooperation and a reasonable explanation for its alleged noncompliance."). Here several issues of fact exist as to whether Vision I complied with the policy provisions.

The Court finds the present facts to be analogous to those in *Paulucci,* 190 F.Supp.2d at 1326, where the court held the plaintiff was entitled to summary judgment on the insurer's affirmative defense that the plaintiff breached the EUO re-

quirement in the policy. The insurer, as with Aspen here, contended that the plaintiff breached the EUO provision by filing suit prior to the additional examinations agreed to by the parties and prior to submitting all of the requested documentation. *Id.* The court recognized that while under "Florida law it is clear that the failure to comply with an insurance policy's examination under oath requirement constitutes a breach," neither party submitted controlling authority as to whether the filing of an action by the insured against the insurer prior to subsequent examinations agreed to by the parties constitutes a breach. *Id.* (quoting *Goldman v. State Farm Fire Gen. Ins. Co.*, 660 So.2d 300 (Fla. 4th DCA 1995)). Instead, the court concluded that by submitting an individual to four hours of questions and providing numerous documents, the plaintiff had substantially satisfied the EUO provision of the policy. *Id.* The court further noted that the fact that the insurer had some "unanswered questions at the conclusion of the examination and that [the plaintiff] agreed to help [the insurer] obtain answers through additional examinations does not mean that the examination of [the individual] was insufficient to satisfy [the plaintiff's] obligations under the contract." *Id.*

Similarly here, Vision I contends that it submitted Mr. Greenfield to over four hours of questions and provided Aspen with numerous documents prior to Mr. Greenfield's EUO. [DE–91–7, pg. 73, 76, 209–211]. Nevertheless, Aspen argues that Vision I did not comply with its duty to submit to EUOs since Aspen had requested additional EUOs from Vision I but Vision I proceeded to file this action, and on the ground that Mr. Greenfield failed to sign the errata sheet verifying whether or not his answers were true. However, Vision I points out that there is no provision in the Aspen policy that requires that it subject itself to more than one EUO and there is no provision as to when Mr.

Greenfield was required to sign the EUO answers. Consequently, the Court cannot find, based on this disputed evidence, that Plaintiff has failed to comply with the EUO requirements under the Aspen policy, failed to produce requested information or failed to cooperate in the investigation. Instead, as in *Paulucci*, the fact that Aspen may have had some "unanswered questions at the conclusion of the examination" of Mr. Greenfield does not mean that the examination of Mr. Greenfield was insufficient as a matter of law to satisfy Vision I's obligations under the Aspen policy. At most, this evidence creates a disputed issue of material fact regarding Vision I's compliance with the terms of the contract. Moreover, having concluded that genuine issues of material fact exist as to whether Vision I provided timely notice and whether Vision I complied with the policy provisions, summary judgment is inappropriate in regard to whether Vision I breached the "no action clause" in Section D of the Aspen policy. Accordingly, Defendant is not entitled to summary judgment on its second affirmative defense as genuine issues of disputed fact exist.

### 3. Increased Cost of Construction/Ordinance and Law Coverage

Aspen also moves for partial summary judgment as to any claim Plaintiff asserts based on the increased cost of construction coverage in Section 4 of the policy or based on the endorsement for ordinance and law coverage in Section E because it cannot satisfy the policy requirements. Both coverages require that the repair or replacement be made no later than two years after the loss. Here, Plaintiff did not even file its Sworn Statement of Proof of Loss until more than two years after the loss and the repairs to the applicable property (windows, sliding glass doors, and roofs) have not yet been made. Therefore, Aspen argues that Plaintiff should be barred from claiming these coverages.

Vision I contends that summary judgment is not appropriate as these issues involve factual matters that are disputed. Plaintiff argues the "prevention doctrine" precludes Aspen's arguments as Aspen was the one that frustrated its efforts to conduct repairs. Vision I argues that it could not make repairs without first receiving funds from Aspen on the demand for ACV payment. [DE–80–5, pg. 166–167; DE–90–5, pg. 5]. Plaintiff points to *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, Case NO. 07–22988–CV, 2009 WL 1492019, *2 (S.D.Fla. May 27, 2009), where the court rejected a similar argument by the insurer as it would allow the insurer to benefit from its failure to pay the plaintiff's claim on an ACV basis by relying on that failure to exclude recovery under other provisions of the policy. Vision also argues that Aspen cannot insist upon the condition precedent that it itself prevented from being performed. Aspen denied the claim and refused to provide payment on an ACV basis, which Vision I contends frustrated the ability of Vision I to conduct repairs. In reply, Aspen argues that the failure to make the repairs was not due to any failure by the insured—it was the Plaintiff's failure to timely present the claim that bars it from qualifying for these coverages.

In *Buckley*, as with the provision at issue here, the insured's policy provided that the insurer was obligated to provide replacement cost ("RCV") and law and ordinance coverage only if the plaintiff actually repaired or replaced the damaged property upon which the claim was based. 2009 WL 1492019, *1. Also like here, the plaintiff never made the repairs, but the court nonetheless concluded the plaintiff was still able to recover due to the defendant's frustration of the plaintiff's efforts to make the repairs. *Id.* The court relied upon the analogous case of *Vantage View,*

*Inc. v. QBE Ins. Corp.*, Case No. 07–61038–CIV, 2009 WL 536546 at *3–5 (S.D.Fla. Mar. 3, 2009), where the court concluded that it was not " 'reasonably possible' for the insured to make repairs without the receipt of the funds from the insurer." *Id.* The court noted the "necessary interaction between ACV and the RCV/Law and Ordinance provisions of the insurance contract, and recognized the insured was unable to make the repairs because the ACV value had never been paid on the claim." *Id.* Thus, the court concluded that without the ACV recovery, the plaintiff was frustrated from making the repairs necessary to recover under the RCV and law and ordinance coverage provisions. *Id.* at *2. The court emphasized that Florida law provides "a party, who, by his own acts, prevents performance of a contract provision cannot take advantage of his own wrong." *Id.* (citing *North Am. Van Lines v. Collyer,* 616 So.2d 177, 179 (Fla. 5th DCA 1993)).

■ Similarly here, the Court concludes that Aspen is not entitled to judgment as a matter of law on Vision I's claims for law and ordinance and increased cost of construction coverage. Instead, the Court agrees with the reasoning in *Buckley* and *Vantage View,* and concludes that there is a "necessary interaction" between ACV and these additional coverages. *Id.* at *1. Thus, until it is determined whether Aspen was obligated to provide ACV payments to Vision I in the first place or whether Vision I was prevented from making the necessary repairs due to the lack of ACV payments, genuine issues of material fact exist that preclude summary judgment on these claims.

### 4. Replacement Cost Coverage

Aspen further argues that Plaintiff cannot satisfy the replacement cost coverage ("RCV") requirements of the policy. Aspen argues that the undisputed evidence is

that Vision I has not replaced any of the roofs, windows, or sliding glass doors. It also has not made the repairs as soon as reasonably possible after the loss or damage and did not give notice of the intent to seek replacement cost coverage within 180 days of the loss or damage as required by the policy. Therefore, pursuant to Section G(3) of the policy, Aspen contends that Vision I is not entitled to RCV until the damages have been repaired or replaced. *See Ceballo v. Citizens Property Ins. Co.*, 967 So.2d 811, 814 (Fla.2007).

Vision I counters by again raising the prevention doctrine, and argues that Aspen cannot demand that Vision I complete its repairs before receiving RCV because Aspen's failure to provide ACV prevented Vision I from making those repairs. In reply, Aspen argues that even if the prevention doctrine is applied, Plaintiff is not eligible for RCV as it did not make the repairs as soon as reasonably possible and did not give notice of its intent to seek RCV within 180 days of the loss or damage.

■ The clear and unambiguous language of Section G(3)(c.) required Vision I to notify Aspen of Vision I's intent to make a claim for RCV coverage within 180 days after the loss or damage. Aspen points out that Vision I did not file its Sworn Statement in Proof of Loss until October 26, 2007, and did not indicate its intention to claim RCV coverage until November 2, 2007, over two years after the loss and over a year after Vision I notified Aspen of the claim. Importantly, Vision I does not dispute that it failed to provide notice of its intention to seek RCV coverage within 180 days of the loss or damage, or present evidence that it somehow complied with this policy provision. Moreover, Vision I does not dispute or argue that conduct by Aspen prevented Vision I from notifying Aspen of its intention to seek RCV coverage, instead Vision I merely argues that it

was prevented from making the repairs due to Aspen's failure to provide ACV payments. Even assuming *arguendo* that there is a genuine issue of fact as to whether Vision I was prevented from making the repairs due to Aspen's failure to provide ACV payments, Vision I has provided no grounds to explain Vision I's failure to notify Aspen of its intention to seek RCV coverage until well after the time provided for in the policy. Whether calculating the 180 day time period from the date of loss on October 24, 2005, or the date Vision I provided its first notice of loss to Aspen in June of 2006, Vision I's request for RCV coverage in November of 2007 clearly falls outside of the 180 day notification period required by the policy. Therefore, Vision I's claim for RCV fails as a matter of law based upon the clear language of the policy provisions.

### III. *CONCLUSION*

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Aspen Specialty Insurance Company's Motion for Summary Judgment and Partial Summary Judgment with Supporting Memorandum of Law [DE–83] is hereby **GRANTED in part, DENIED in part;**

2. Defendant Aspen Specialty Insurance Company is hereby **GRANTED PARTIAL SUMMARY JUDGMENT** in its favor on its Third Affirmative Defense and on Count V of the Complaint as Plaintiff Vision I is precluded from recovering Replacement Cost Coverage.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 21st day of December, 2009.