**EL DORADO TOWERS CONDO-MINIUM ASSOCIATION, INC., Plaintiff,**

v.

**QBE INSURANCE CORPORATION, Defendant.**

**Case No. 09–20047–CIV.**

United States District Court, S.D. Florida.

June 16, 2010.

Robert Anthony Reynolds, Merlin Law Group PA, Coral Gables, FL, William F. Merlin, Jr., Jean Frances Niven, Merlin Law Group PA, Tampa, FL, Daniel S.

Rosenbaum, John Marcus Siracusa, Joseph William Janssen, III, Laurel Ruthanne Wiley, Melissa Devlin, Richard Chambers Valuntas, Tatiana B. Yaques, Rosenbaum Mollengarden Janssen & Siracusa, PLLC, West Palm Beach, FL, for Plaintiff.

Constantine Georgalis Nickas, Damian Dwight Daley, William Frederick Fink, Wicker Smith O'Hara McCoy & Ford PA, Miami, FL, Evelyn Maureen Merchant, William S. Berk, Berk Merchant & Sims PLC, Coral Gables, FL, Catherine Deborah Bain, Ronaflor E. Smith, C. Deborah Bain PA, North Palm Beach, FL, James Joseph Wicker, II, Rachel Studley, Wicker Smith Tutan O'Hara McCoy Graham & Ford, West Palm Beach, FL, for Defendant.

## AMENDED ORDER DENYING DEFENDANT QBE INSURANCE CORPORATION'S MOTION FOR SUMMARY JUDGMENT [DE 41] [1]

ALAN S. GOLD, District Judge.

THIS CAUSE is before the Court upon Defendant QBE Insurance Corporation's ("QBE") Motion for Summary Judgment [DE 41], filed on December 30, 2009. Plaintiff El Dorado Towers Condominium Association, Inc. ("Plaintiff") filed a Response to QBE's Motion [DE 58] on January 26, 2010, and QBE filed a Reply [DE 61] on February 10, 2010. Oral argument on the Motion was held on May 7, 2010. I have carefully reviewed the pleadings filed by the parties, the record and the applicable law. For the reasons set forth below, Defendant's Motion is denied.

## I. Background

Upon review of the record, including QBE's Statement of Material Facts, the Plaintiff's Response, and the evidentiary materials offered by both sides, the follow-

1. This Order corrects a typographical error on page sixteen (16) of the Court's Order previously issued on May 24, 2010 [See DE 132, p. 16], and also addresses Defendant's Motion to Strike [DE 82].

ing facts relevant to the disposition of QBE's Motion are undisputed:[2]

Plaintiff was insured by Defendant QBE through a commercial property insurance policy, number QF2950–06 (the "Policy"), for a total of $31,861,000.00. (Pl. Statement, ¶ 1). The Policy was issued to Plaintiff for the twelve month period commencing February 2, 2005. [*See* DE 18, Ex. A]. The Policy contained the following provisions setting forth the insured's duties in the event of loss or damage:

a. You must see that the following are done in the event of loss or damage to Covered Property:

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may

be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

[DE 18, Ex. A]. The Policy also contained the following provision governing the insured's right to bring legal action against the insurer:

D. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part

. . .

(*Id.*)

Plaintiff alleges that Hurricane Wilma struck El Dorado on October 24, 2005. [*See* DE 18]. At some point shortly after the Hurricane, Plaintiff provided QBE with an initial notice of the loss. (Pl. Statement, ¶ 6). Thereafter, on November 21, 2005, QBE's insurance adjuster, Sanford Siegel ("Mr. Seigel"), in conjunction with the public adjuster retained by Plaintiff, Joseph Zevuloni ("Mr. Zevuloni"), inspected the loss location. (*Id.*, ¶ 7). At that time, QBE's adjuster requested copies of records from Plaintiff's public adjuster, including preliminary damage surveys, invoices/estimates relating to the alleged damages, and any reports from Plaintiff's engineers and contractors.[3] (*Id.*, ¶ 6).

---

**2.** In the Southern District of Florida, a party moving for summary judgment must submit a statement of undisputed facts. S.D. Fla. L.R. 7.5. If necessary, the non-moving party may file a concise statement of the material facts as to which it is contended there exists a genuine issue to be tried. *Id.* Each disputed and undisputed fact must be supported by specific evidence in the record, such as depositions, answers to interrogatories, admissions, and affidavits on file with the Court. *Id.* All facts set forth in the movant's statement which are supported by evidence in the record are deemed admitted unless contro-

verted by the non-moving party. *Id.* QBE filed a Statement of Material Facts [DE 42] ("Def. Statement"), Plaintiff has filed its Statement of Material Facts in Opposition to Defendant's Statement [DE 57] ("Pl. Statement").

**3.** After receiving a single document in response to QBE's November 2005 inquiry, QBE's adjuster explained the policy conditions and again requested records from Plaintiff on December 9, 2005. QBE's adjuster reiterated this request on December 22, 2005, after Plaintiff's public adjuster and attorney

On February 15, 2006 QBE sent two letters to Plaintiff's lawyer requesting additional records, and advising that QBE would "travel to the condominium or management office where the records are maintained" and "bring our own photocopy machines to facilitate copying of any records deemed to be material to the investigation." (*Id.*, ¶ 8) QBE also advised Plaintiff that "one or more" examinations under oath would be required after QBE had reviewed Plaintiff's records. (*Id.*, ¶ 33). Two days later, on February 17, 2006, Plaintiff submitted a claim for damages allegedly caused by Hurricane Wilma totaling $31,754,520.25, and advised QBE that the requested records would be made available for inspection.[4] (*Id.*, ¶ 9). On the same day, the estimate prepared by Plaintiff's public adjuster, Mr. Zevuloni, consisting of two thousand nine hundred and thirty nine pages (2,939) was received by QBE's adjuster, Mr. Seigel. Thereafter, certain records were produced on March 13, 14 and 15, 2006; however, Plaintiff did not permit QBE to inspect unit owner files. (*Id.*) On March 28, 2006, QBE again inspected the loss location for three days. (*Id.*, ¶ 23). Additional documents were also produced in March 2006. (*Id.*, ¶ 11). However, Plaintiff's counsel advised QBE that additional unspecified documents were being withheld under a claim that they were privileged or confidential.[5] (*Id.*)

In a letter dated May 25, 2006, after reviewing the records produced by Plaintiff, QBE requested an examination under oath of a designated corporate representative with the most knowledge of the damages sustained from Hurricane Wilma, the necessary repairs, and the insurance claim. (Def. Statement, ¶ 34). QBE also requested examinations under oath of six additional witnesses, including Plaintiff's property manager and current and former members of Plaintiff's Board of Directors ("Board Members"). (*Id.*). On August 9, 2006, QBE conducted examinations of Plaintiff's corporate representative and property manager. (*Id.*, ¶ 35). Both of these individuals produced by Plaintiff deferred to Plaintiff's public adjuster on a number of issues. (*Id.*, ¶ 36). For example, when asked about the estimates for the Hurricane repairs, Plaintiff's corporate representative deferred to the public adjuster stating "as far as that was concerned he took care of that." (*Id.*). Plaintiff's Property Manager also claimed to have no involvement in determining the extent of the Hurricane Wilma damages or obtaining bids or estimates. (*Id.*)

On August 13 and 31, 2006, QBE reiterated its request for the remaining examinations under oath, but Plaintiff's attorney advised that he would not produce any other individuals for examination. (*Id.* ¶ 37). On September 11, 2006, QBE again requested the additional examinations under oath; requested the examination of Plaintiff's public adjuster; and provided proposed dates for the examination of Plaintiff's public adjuster. (*Id.*). Plaintiff responded on October 3, 2006 by denying

---

produced a letter from the City of Aventura, but otherwise did not respond to the request. (Def. Statement, ¶ 7).

4. The insured replacement value of Plaintiff's two buildings under the QBE policy totaled $31,861,000.00. (Def. Statement, ¶ 4).

5. On May 11, May 25, and June 7, 2006 QBE again requested access to the unit owner files and an explanation of Plaintiff's basis for

withholding documents. According to QBE, after receiving no response for months, on August 31, 2006 and on September 11, 2006, QBE again requested an update on the status of the pending records request. On the other hand, Plaintiff contends that during this time period—May 2006 to September 2006—it wrote to QBE's representative Mr. Siegel and Deborah Bain, Esq. on several occasions without response from QBE. (Def. Statement, ¶¶ 12; Pl. Statement, ¶ 12).

QBE's request for the additional examinations. (*Id.*)

QBE informed Plaintiff on October 30, 2006, that its failure to produce the records and the additional examinations under oath had impeded and delayed QBE's investigation, reiterated its offer of a confidentiality agreement for any unit member files, and attached a proposed confidentiality agreement. (*Id.*, ¶ 38). With regard to the withheld documents referred to by Plaintiff's attorney as "solely limited to board meeting and minutes," QBE requested a list of the documents withheld and further requested that Plaintiff provide copies of the documents with allegedly privileged material redacted. (*Id.*, ¶ 14). On December 14, 2006, QBE explained the purposes behind the policy conditions, again requested access to the unit owner files and withheld documentation, and informed Plaintiff that this was its final opportunity to comply and cooperate. (*Id.*, ¶ 15). In the December 14, 2006 letter QBE also cited the Sworn Statement in Proof of Loss ("sworn proof of loss") provision of the Policy and provided a copy of the sworn proof of loss form. (*Id.*, ¶ 49).

QBE received no communication for the next six months. (*Id.*, ¶ 16). Then, on June 26, 2006, QBE received a letter of representation from Plaintiff's second attorney, Hugh Lumpkin ("Mr. Lumpkin"). (*Id.*). On July 17, 2007, QBE reiterated its request for the examinations under oath; stated that it was prejudiced by Plaintiff's failure to provide a sworn proof of loss; and provided another copy of the sworn proof of loss form. (*Id.*, ¶ 40). On July 20, 2007, Mr. Lumpkin advised that he was searching for someone with similar knowledge to Plaintiff's public adjuster to produce for an examination under oath because Mr. Zevuloni was no longer the public adjuster for Plaintiff. (*Id.*; Pl. Statement ¶ 40). Moreover, in the same correspondence, Mr. Lumpkin advised that he was reviewing the unit owner files and meeting minutes for the possible production of additional documentation. (*Id.*, ¶ 18). The letter also reminded QBE that it had already copied over eleven thousand pages of documents belonging to Plaintiff, and that QBE failed to produce QBE's estimate of damage, engineering reports,[6] or provide any cooperative response to arrive at an agreed amount of the loss. (Pl. Statement, ¶ 18). Mr. Lumpkin also advised QBE that Plaintiff would be submitting "numbers as accurate as possible within the next couple of weeks—numbers substantially refined." (Def. Statement, ¶ 52). However, no sworn proof of loss or revised claim was submitted to QBE in 2007. (*Id.*)

No further communication was received for several months, and QBE sent a follow-up letter on January 7, 2008. (*Id.*, ¶ 19). That same day, QBE received notice that Plaintiff was represented by its third attorney. (*Id.*, ¶ 220). QBE then received a letter of representation from Merlin Law Group on February 26, 2008, claiming that Plaintiff had complied with all policy conditions and demanding appraisal. (*Id.*). QBE also received a sworn proof of loss on February 26, 2008, alleging damages from Hurricane Wilma totaling $21,381,343.02, but the sworn proof of loss was not on the form provided by QBE. (*Id.*, ¶ 54).

On March 20, 2008, QBE informed Plaintiff that its sworn proof of loss was untimely as it was received over fourteen

---

6. Prior to June 5, 2006, Plaintiff commissioned an engineering firm, Hart Weidlinger and Associates, to study the structural issues at El Dorado and issue a report of their findings. The report details several life safety concerns existing in the buildings due to Hurricane Wilma. The report was sent to QBE's adjuster by Plaintiff's adjuster, but QBE did not provide its engineer's report to Plaintiff. [*See* DE 55 Ex. H].

months after QBE's initial request, and that it was not on the form provided by QBE. (*Id.*, ¶ 55). On May 8, 2008, Plaintiff's attorney agreed to permit inspection of unit owner files and also submitted Plaintiff's sworn proof of loss on the form provided by QBE.[7] (*Id.*, ¶¶ 22, 54) On July 8–9, 2008, QBE conducted the inspection of unit owner files. (*Id.*, ¶ 22). Thereafter, on September 11, 2008, Plaintiff's attorney produced the minutes of a meeting of Plaintiff's Board of Directors in December 2005, along with minutes of several meetings in 2006. (*Id.*, ¶ 23) The minutes of the December 21, 2005 meeting stated that Plaintiff's Directors asked owners to refrain from repairing their units so they did not "diminish" the insurance claim of the entire building. (*Id.*, ¶ 24).

On September 23, 2008, QBE notified Plaintiff that it had failed to produce minutes of meetings from the year 2005 just prior to Hurricane Wilma.[8] (*Id.*, ¶ 26). On November 20, 2008, Plaintiff produced additional meeting minutes from 2005 prior to Hurricane Wilma, which had not previously been provided to QBE. (*Id.*, ¶ 27). In the minutes of a meeting on September 22, 2005, Plaintiff's Directors discussed a "plan" involving approximately eight million dollars as "an educated guess as to the actual cost of the painting, framing and balconies," and discussed a list of items that were "previously discussed for the last three years only now there was no choice," including hiring a structural engineer. (*Id.*). At that meeting, just one month prior to Hurricane Wilma, Plaintiff's Directors also passed a special assessment of over one million dollars for multiple necessary repair projects, including a structural engineer for $30,000.00.[9] (*Id.*).

On December 5, 2008, QBE requested confirmation that all meeting minutes and withheld documents were provided. (*Id.*, ¶ 32). On January 9, 2009, QBE scheduled the six remaining examinations under oath for February 9 and 10, 2009. (*Id.*, ¶ 44). Plaintiff's position in response was that the additional examinations under oath were not required under the terms and conditions of the Policy, and, thus, Plaintiff filed this lawsuit on January 8, 2009. (Pl. Statement, ¶ 44)

Plaintiff asserts two counts against QBE. Count I of the Amended Complaint seeks a declaratory judgment requesting that this Court determine Plaintiff and QBE's duties and obligations under the policy. [DE 18, pp. 2–5]. Count II is for breach of contract for failure to tender insurance proceeds allegedly due under the Policy. [*Id.*, pp. 5–9]. QBE has

---

7. Two days later, on May 15, 2008, QBE again requested that Plaintiff comply with its outstanding request for additional examinations under oath. (Def. Statement ¶ 42).

8. On September 23, 2008, QBE also advised Plaintiff that it felt it could not conclude its investigation until Plaintiff permitted the previously requested additional examinations under oath. (Def. Statement, ¶ 43).

9. Although Plaintiff produced the minutes for the September 2005 meeting, Plaintiff did not produce any meeting minutes for October 2005, the month of the Hurricane. (Def. Statement, ¶ 29). In his letter dated November 20, 2008, Plaintiff's attorney stated "there were no meetings held in June, July, August and October 2005 and therefore no minutes exist." (*Id.*). However, after this lawsuit was filed, Plaintiff produced an agenda for the meeting on October 20, 2005, along with a Manager's Report for that meeting indicating that contractors "took a survey and the cost for each balcony will be approximately ... $14,500.00 per balcony." (*Id.*, ¶ 31). As Plaintiff's buildings have 512 units, the balcony project discussed days prior to Hurricane Wilma was expected to cost over seven million dollars. (*Id.*) Despite the foregoing, it is unclear from the record whether the October 20, 2005 meeting took place. [*See* 5/07/10 Tr., DE 119, p. 15].

moved for summary judgment on both counts.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. *See id.* ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir.2004).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir.2001). In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the nonmoving party.[10] *Denney*, 247 F.3d at 1181.

## III. Discussion

QBE argues that it is entitled to summary judgment based upon its affirmative defenses of non-compliance with the policy conditions and failure to fulfill conditions precedent to recovery under the Policy. More specifically, QBE argues as follows: (1) Plaintiff denied QBE's request to conduct additional examinations under oath; (2) Plaintiff failed to provide its sworn proof of loss for fourteen months after QBE's initial request, and failed to provide the sworn proof of loss on the form provided by QBE for sixteen months after QBE's initial request; and (3) Plaintiff failed to produced all requested records relating to its claim.

In support of its summary judgment motion, QBE points to a wide variety of cases, all of which stand for the proposition that where an insured fails to comply with policy conditions and conditions precedent to filing suit under an insurance contract, the insured has materially breached its contract and may not prevail in a law suit against the insurer. *See, e.g., Goldman v.*

---

**10.** This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Moreover, because the parties have not addressed choice of law, I presume the applicability of Florida law, i.e., the law cited by the parties. *Manhattan Bank v. Rood*, 698 F.2d 435, 436 n. 1 (11th Cir.1983). Under Florida law, I "must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir.1982) (citations omitted).

*State Farm Fire General Ins. Co.*, 660 So.2d 300 (Fla. 4th DCA 1995) (holding that where the insured fails to comply with a condition precedent to filing suit, including submitting to an examination under oath, the insurer is entitled to summary judgment as a matter of law); *Ferrer v. Fidelity & Guaranty Insurance Co.*, 10 F.Supp.2d 1324 (S.D.Fla.1998) (granting summary judgment in favor of an insured based upon the insured's failure to comply with policy conditions as a condition precedent to filing suit). Two commonly recognized conditions precedent in insurance contracts are the requirements that an insured: (1) submit to an examination under oath, and (2) submit a sworn proof of loss. *See Coconut Key Homeowners Ass'n, Inc. v. Lexington Ins. Co.*, 649 F.Supp.2d 1363, 1369 (S.D.Fla.2009). While a total failure to comply with post-loss policy provisions may preclude recovery as a matter of law, "if [ ] the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury." *See id.* at 1369–70 (internal citations and quotations omitted); *see also Horizons Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 2007 WL 294230, at *4 (M.D.Fla. Jan. 29, 2007) ("Florida law is clear that while a total failure to comply with policy provisions made a prerequisite to suit under the policy may constitute a breach precluding recovery from the insurer as a matter of law, if the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury.") (citing *Haiman v. Fed. Ins. Co.*, 798 So.2d 811, 812 (Fla. 4th DCA 2001)); *accord Sunshine State Ins. Co. v. Corridori*, 28 So.3d 129, 131 (Fla. 4th DCA 2010) (holding that whether insureds' compliance with the policy was sufficient is a dispute of fact); *Starling v. Allstate Floridian Ins., Co.*, 956 So.2d 511 (Fla. 5th DCA 2007) (total failure to cooperate may preclude insured's recovery; however, if insured cooperates to some degree or provides explanation for noncompliance a factual issue exists); *Schnagel v. State Farm Mut. Auto. Ins. Co.*, 843 So.2d 1037, 1038 (Fla. 4th DCA 2003) ("[w]here, as here, an insured cooperates to some degree, the issue of whether there has been a material breach of the insurance contract is one for a jury-not the trial judge").

## A. Failure to Submit to Additional Examinations Under Oath

QBE argues that Plaintiff failed to comply with the post-loss policy conditions by refusing to submit to additional examinations under oath. The policy states, in relevant part, as follows:

[In the event of a loss, the insurer] may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

[DE 18, Ex. A]. On May 25, 2006, QBE requested examinations under oath of a designated corporate representative, Plaintiff's property manager, and current and former Board Members. Thereafter, QBE conducted examinations under oath of Plaintiff's designated corporate representative and property manager on August 9, 2006. However, both of these individuals deferred to Plaintiff's public adjuster on a number of key issues. Thus, on September 11, 2006, QBE reiterated its request for the examinations under oath originally sought on May 25, 2006, and also requested to examine Plaintiff's public adjuster. QBE argues that Plaintiff breached the Policy because QBE requested additional examinations under oath, but Plaintiff proceeded to file this action instead of comply-

ing with QBE's requests. In response, Plaintiff argues that it complied with the examination under oath requirement by submitting Plaintiff's designated representative and property manager for examination.

■ Plaintiff relies on *Goldman v. State Farm Fire General Ins. Co.*, 660 So.2d 300, 303 (Fla. 4th DCA 1995), for the proposition that an "insured's refusal to comply with the demand for an [examination under oath] is a willful and material breach of an insurance contract, which precludes the insured from recovery under the policy." For purposes of my analysis, *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F.Supp.2d 1333 (S.D.Fla.2009), is particularly instructive. There, the defendant argued that it was entitled to summary judgment because the plaintiff had failed to comply with its request to provide additional examinations under oath. As in the present case, the plaintiff in *Vision I* had submitted a corporate representative for examination and provided the defendant with numerous documents prior to the examination under oath. The Court noted that there was no provision in the policy that required that the insured subject itself to more than one examination under oath, despite the fact that the policy stated that the insurer was entitled to examine "any insured." *See Vision I Homeowners Ass'n, Inc.*, 674 F.Supp.2d at 1340–41. Based on established Florida law set forth in *Haiman v. Fed. Ins. Co.*, 798 So.2d 811 (Fla. 4th DCA 2001), the Court in *Vision I* concluded that "at most, [the] evidence [presented] creat[ed] a disputed issue of material fact regarding Vision I's compliance with the terms of the contract." *See Vision I Homeowners Ass'n, Inc.*, 674 F.Supp.2d at 1341; *see also Haiman*, 798 So.2d 811 at 812 (where insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented regarding the necessity or sufficiency of compliance).

■ Similarly, under the instant facts, I am persuaded that the issue of whether Plaintiff complied with the Policy's examination under oath requirement is a question of fact for the jury precluding summary judgment. QBE argues that it was entitled to request examinations under oath of Board Members who were unit owners considered to be "additional insureds" under the terms of the Policy. [*See* DE 42–2, p. 22]. Even assuming that QBE was entitled to examine unit owners as "additional insureds," as the Court did in *Vision I*, I decline to conclude as a matter of law that Plaintiff failed to sufficiently comply with the policy's examination under oath requirement thereby forfeiting all of its rights under the Policy.[11] *See Schneer v. Allstate Indem. Co.*, 767 So.2d 485, 489 (Fla. 3d DCA 2000) (forfeiture of insurance policies are generally disfavored). It is undisputed that Plaintiff submitted its corporate representative and the property manager who was not an "additional insured" under the Policy to examinations under oath. [DE 42, ¶ 35]. In addition, as in *Vision I*, there is no provision in the Policy requiring Plaintiff to subject itself to more than one examination under oath, despite the fact that the Policy states that QBE is entitled to examine "any insured." *See Vision I Homeowners Ass'n, Inc.*, 674 F.Supp.2d at 1340–41. Moreover, although undoubtedly the

---

**11.** I note that I do not reach the issue of whether any of the Board Members qualify as "additional insureds" under the policy. Nevertheless, it bears mentioning "that in interpreting insurance contracts, the policy should be construed so as to give effect to the intent of the parties and if the policy is ambiguous, it should be construed against the insurer and in favor of the insured." *Florida Gaming Corp. v. Affiliated FM Ins. Co.*, 502 F.Supp.2d 1257, 1261 (S.D.Fla.2007).

examination of Plaintiff's public adjuster would have aided QBE's investigation, I decline to conclude that Plaintiff's failure to submit its public adjuster for examination under oath constitutes a material breach of the Policy warranting summary judgment in QBE's favor.[12] *See Florida Gaming Corp. v. Affiliated FM Ins. Co.,* 502 F.Supp.2d 1257, 1261 (S.D.Fla.2007) (concluding that insurer was not entitled to summary judgment based on the insured's failure to make its adjuster available for an examination under oath, where the insurance policy did not expressly state that the insurer was required to submit to examination). Accordingly, material issues of fact exist as to whether Plaintiff sufficiently cooperated with the examination under oath requirement, and, thus, QBE is not entitled to summary judgment on this ground. *See Haiman,* 798 So.2d 811 at 812.

### B. Failure to Timely Submit a Sworn Proof of Loss

QBE further argues that Plaintiff materially breached a policy condition precedent by failing to timely submit a signed sworn proof of loss after it was requested. The Policy requires Plaintiff to send QBE a sworn proof of loss within sixty days after the insurer's request. [*See* DE 18, Ex A]. In the instant case, the record reflects that the deadline for Plaintiff to provide the sworn proof of loss was February 14, 2007. However, QBE did not receive Plaintiff's sworn proof of loss until February 26, 2008, fourteen months after QBE's request. Moreover, because Plaintiff's initial sworn proof of loss was not on QBE's form, it was rejected by QBE as unsatisfactory. Subsequently, on May 8, 2008, Plaintiff submitted a revised sworn

proof of loss on the form provided by QBE, albeit sixteen months after QBE's request.

■■■ Taking into account the required element of materiality, I conclude that there are genuine issues of fact as to whether Plaintiff's breach was material enough to preclude the insured from recovery under the policy. *See Haiman,* 798 So.2d 811 at 812 (where insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented regarding the sufficiency of compliance). In so finding, I have considered the reasoning set out in the recent unpublished Eleventh Circuit decision, *Swaebe v. Federal Ins. Co.,* 374 Fed.Appx. 855, 855–56, 2010 WL 785995, *1 (11th Cir. March 10, 2010). There, the Court stated that the materiality standard set forth in *Haiman* did not aide the plaintiff's argument on appeal because the plaintiff had breached the policy's "no action" provision by failing to submit a signed sworn proof of loss *prior to filing suit. Id.* at 858–59, at *3. In the present case, Plaintiff provided a sworn proof of loss fourteen months after QBE's initial request, and subsequently complied with QBE's request to re-submit the sworn proof of loss on the form provided by QBE. Importantly, the sworn proofs of loss were provided by Plaintiff prior to the filing of this lawsuit. *Cf. Starling v. Allstate Floridian Ins. Co.,* 956 So.2d 511, 513 (Fla. 5th DCA 2007) (concluding that where plaintiff did not submit a sworn proof of loss until three months *after she filed suit* there was no genuine issue of fact that plaintiff materially breached the policy conditions precedent, and thus, the insurance company was

---

12. In this same vein, I note that the record shows that on July 20, 2007 Plaintiff's attorney resorted to searching for someone with similar knowledge to Plaintiff's public adjuster because Mr. Zevuloni had been discharged.

[DE 57, ¶ 40]; *see Haiman,* 798 So.2d 811 at 812 (an explanation for noncompliance presents a dispute of fact appropriate for resolution by a jury).

entitled to judgment as a matter of law); *accord Swaebe,* 374 Fed.Appx. at 858–59, 2010 WL 785995 at *3 (plaintiff materially breached insurance policy where record showed that she filed suit prior to complying with provisions of her policy and before any proof of loss had been filed). Accordingly, genuine issues of fact exist as to whether Plaintiff's breach of the proof of loss provision was material enough to warrant a forfeiture of Plaintiff's rights under the Policy.[13] *See LeMaster v. USAA Life Ins. Co.,* 922 F.Supp. 581, 585 (M.D.Fla.1996) (forfeiture of insurance policies are generally disfavored).

### C. Failure to Produce Books and Records

■ QBE also argues that it is entitled to summary judgment because Plaintiff failed to satisfy the Policy's post-loss conditions by not permitting QBE "to examine its books and records as often as may reasonably be required." [DE 41, p. 5]. In response, Plaintiff argues that it has satisfied the requirement and has sufficiently provided relevant, non-privileged information. To that end, Plaintiff claims that it has provided over eleven thousand documents to QBE during its investigation of Plaintiff's claim, including a report prepared by Plaintiff's public adjuster consisting of a "two thousand nine hundred and thirty nine page (2,939) line item estimate of damages" sustained by Plaintiff. [*See* DE 58, p. 3]. Plaintiff also notes that it informed QBE on several occasions that the reason certain documents were being withheld was that they were privileged or confidential. On October 3, 2006, Plaintiff further informed QBE that it could not comply with its request to produce unit owner files because unit owners were in-

formed that their files would be kept confidential. [DE 57, ¶ 13]. Moreover, Plaintiff's attorney finally did agree to permit inspection of the requested unit owner files, and on July 8–9, 2008 the inspection was conducted. Although the requested unit owner files and other documents alleged to be relevant to QBE's investigation were not produced until months and at times years after QBE's repeated requests, as I have previously noted, under Florida law "cooperation to some degree" or "an explanation for [ ] noncompliance" presents a dispute of fact appropriate for resolution by a jury. *See Haiman,* 798 So.2d 811 at 812 (failure to produce certain documents did not entitle insurance company to judgment as a matter of law when the claimant produced "volumes of documents" for the insurance company); *see also Paulucci v. Liberty Mut. Fire Ins. Co.,* 190 F.Supp.2d 1312, 1328 (M.D.Fla. 2002) (question of fact existed as to whether plaintiff breached its obligation under insurance policy by failing to produce relevant documents where plaintiff had provided over one thousand two hundred documents to insurer). Accordingly, QBE has failed to show as a matter of law that Plaintiff materially breached the Policy's records inspection provision, and, thus, summary judgment is unwarranted.

### IV. Conclusion

In light of the foregoing, I conclude that issues of unresolved fact remain precluding summary judgment in favor of QBE. Accordingly, it is hereby

**ORDERED and ADJUDGED** that

1. Defendant's Motion for Summary Judgment **[DE 41] is DENIED.**

---

**13.** While I do not reach the issue of prejudice, I note that "it is not necessary for the insurance company to prove prejudice where the insured fails to comply with a policy condition precedent to suit." *See Starling v. All-*

state *Floridian Ins. Co.,* 956 So.2d at 513; *see also United States Fidelity & Guaranty Co. v. Romay,* 744 So.2d 467 (Fla. 3d DCA 1999) (provision requiring claimant to submit sworn proof of loss is a condition precedent).

2. Defendant's Motion to Strike Plaintiff's Notice of Supplemental Authority **[DE 82]** is DENIED for failure to comply with S.D. Fla. Local Rule 7.1(a)(3).